UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FEDERAL TRADE COMMISSION, CHRISTOPHER S. PORRINO, Attorney General of the State of New Jersey, and STEVE C. LEE, Director of the New Jersey Division of Consumer Affairs,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**VIZIO, INC., a Delaware corporation, and VIZIO INSCAPE SERVICES, LLC, a Delaware limited liability company,**<br><br>**Defendants.** | Case No._____<br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE AND MONETARY RELIEF** |

Plaintiffs, the Federal Trade Commission ("FTC" or "Commission"), located at 600 Pennsylvania Avenue NW, Washington, D.C., Christopher S. Porrino, Attorney General of the State of New Jersey ("Attorney General") located at the Richard J. Hughes Justice Complex, 25 Market Street, Trenton, New Jersey, and Steve C. Lee, Director of the New Jersey Division of Consumer Affairs ("Director"), located at 124 Halsey Street, 7th Floor, Newark, New Jersey (collectively, "Plaintiffs"), for their Complaint against defendants VIZIO, Inc. ("VIZIO") and VIZIO Inscape Services, LLC ("VIZIO Inscape Services"), with principal places of business at 39 Tesla, Irvine, California 92618 (collectively, "Defendants"), allege:

1.  The FTC brings this action under Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. §53(b) ("FTC Act"), to obtain injunctive relief against Defendants to prevent them from engaging in unfair and deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15. U.S.C. §45(a), and to obtain other relief, including rescission, restitution and

disgorgement, as is necessary to redress injury to consumers and the public interest resulting from Defendants' violation of the FTC Act.

2.     The Attorney General and the Director bring this action under the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.*, ("CFA") to obtain injunctive relief against Defendants and to prevent them from engaging in unconscionable commercial practices, misrepresentations, false promises and/or omissions of material fact in violation of the CFA, N.J. Stat. Ann. § 56:8-2, and to obtain other relief, including civil penalties, N.J. Stat. Ann. § 56:8-13, consumer restitution, N.J. Stat. Ann. § 56:8-14, and reimbursement of attorneys' fees, N.J. Stat. Ann. § 56:8-14, and investigative costs, N.J. Stat. Ann. § 56:8-11.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over the FTC's claims pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

4.     This Court has supplemental jurisdiction over the Attorney General and Director's claims pursuant to 28 U.S.C. § 1367.

5.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c), and 15 U.S.C. § 53(b).

## PLAINTIFFS

6.     The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair and deceptive acts or practices in or affecting commerce.  The FTC is authorized to initiate federal district court proceedings by its own attorneys to enjoin violations of the FTC Act and to secure such relief as may be appropriate in each case, including injunctive

relief, rescission or reformation of contracts, restitution, the refund of monies paid and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b).

7. The Attorney General is charged with the responsibility of enforcing the CFA.  The Director is charged with the responsibility of administering the CFA on behalf of the Attorney General.  The Attorney General and the Director are authorized to initiate proceedings to enjoin violations of the CFA and to seek injunctive relief, restitution, civil penalties, and reimbursement of attorneys' fees and investigative costs.  N.J. Stat. Ann. § 56:8-8, -11, -13, -14 and -19.

## DEFENDANTS

8. Defendant VIZIO is a Delaware corporation with its principal office or place of business at 39 Tesla, Irvine, California 92618.  VIZIO transacts or has transacted business in this District.

9. Defendant VIZIO Inscape Services is a Delaware limited liability company with its principal office or place of business at 39 Tesla, Irvine, California 92618.  VIZIO Inscape Services is a wholly-owned subsidiary of VIZIO, and the successor entity to Cognitive Media Services, Inc., which developed proprietary automated content recognition ("ACR") software to detect the content on internet-connected televisions and monitors.  VIZIO Inscape Services transacts or has transacted business in this District.

## COMMERCE

10. At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## **DEFENDANTS' BUSINESS PRACTICES**

11. Since 2002, Defendant VIZIO has designed and sold televisions in the United States. Since 2010, Defendant VIZIO has sold over 11 million internet-connected televisions.

### Data Collection, Use, and Sale of Licenses

12. Since February 2014, VIZIO has manufactured televisions that continuously track what consumers are watching, and transmit that information to Defendants through VIZIO Inscape Service's proprietary ACR software, which is turned on by default.

13. Beginning in February 2014, Defendants also remotely installed ACR software on previously-sold televisions that did not originally have ACR software installed at the time of purchase.

14. Through the ACR software, VIZIO's televisions transmit information about what a consumer is watching on a second-by-second basis. Defendants' ACR software captures information about a selection of pixels on the screen and sends that data to VIZIO servers, where it is uniquely matched to a database of publicly available television, movie, and commercial content. Defendants collect viewing data from cable or broadband service providers, set-top boxes, external streaming devices, DVD players, and over-the-air broadcasts. Defendants have stated that the ACR software captures up to 100 billion data points each day from more than 10 million VIZIO televisions. Defendants store this data indefinitely.

15. Defendants' ACR software also periodically collects other information about the television, including IP address, wired and wireless MAC addresses, WiFi signal strength, nearby WiFi access points, and other items.

16. VIZIO earns revenue by providing consumers' television viewing history to third parties through licensing agreements, on a television-by-television basis for three main uses, specified by contracts:

a. First, since at least May 2014, Defendants have provided consumers' viewing data to third parties for the purpose of audience measurement, *i.e.*, to determine in the aggregate what consumers watch and how they watch it. Defendants provide these third parties with a persistent identifier for each television (unique for each third party), along with the content (programs and commercials) viewed, when it was viewed, how long it was viewed for, and what channels it was on.

b. Second, since at least May 2015, Defendants have provided consumers' viewing data to third parties for the purpose of analyzing advertising effectiveness (the "data analytics program"). Defendants provide these third parties with IP addresses, so that the third parties can analyze a household's behavior across devices, in order to determine, for example, (a) whether a consumer has visited a particular website following a television advertisement related to that website, or (b) whether a consumer has viewed a particular television program following exposure to an online advertisement for that program. The data is used in the aggregate to evaluate the effectiveness of advertising campaigns.

c. Third, beginning in March 2016, Defendants have provided consumers' data to third parties for the purpose of targeting advertising to particular consumers on their other digital devices based on their television viewing data.

17. Defendants facilitate the provision of demographic information to third parties about VIZIO television viewers. Defendants do this by providing consumers' IP addresses to a data aggregator. The data aggregator uses the IP address information to identify a particular consumer or household, and then sends the third parties described in Paragraph 16 the demographic information associated with that consumer or household. Defendants' contracts with third-party users of the viewing data prohibit the re-identification of consumers and

households by name, but allow the following information to be appended: sex, age, income, marital status, household size, education, home ownership, and household value.

18. For all of these uses, Defendants provide highly-specific, second-by-second information about television viewing. Each line of a report provides viewing information about a single television. In a securities filing, VIZIO states that its data analytics program, for example, "provides *highly specific* viewing behavior data on a massive scale with great accuracy, which can be used to generate intelligent insights for advertisers and media content providers." (emphasis added).

Representations to Consumers

19. Consumers that purchased new VIZIO televisions beginning in August 2014, with ACR tracking preinstalled and enabled by default, received no onscreen notice of the collection of viewing data.

20. For televisions that were updated in February 2014 to install default ACR tracking after purchase, an initial pop-up notification appeared on the screen that said:

> The VIZIO Privacy Policy has changed. Smart Interactivity has been enabled on your TV, but you may disable it in the settings menu. See www.vizio.com/privacy for more details. This message will time out in 1 minute.

This notification provided no information about the collection of viewing data or ACR software. Nor did it directly link to the settings menu or privacy policy. *See* Exhibit A.

21. In March 2016, while Plaintiffs' investigations were pending, Defendants sent another pop-up notification to televisions that, for the first time, referenced the collection of television viewing data. This notification timed out after 30 seconds without input from the household member who happened to be viewing the screen at the time, and did not provide easy access to the settings menu. *See* Exhibit B.

22. In all televisions enabled with ACR tracking, VIZIO televisions had a setting, available through the settings menu, called "Smart Interactivity." This setting included the description: "Enables program offers and suggestions." Similarly, in the manual for some VIZIO televisions, a section entitled "Smart Interactivity" described the practice as "Your TV can display program-related information as part of the broadcast." Neither description provided information about the collection of viewing data. Defendants have not provided any "program offers or suggestions" or "program-related information" for most televisions for more than two years, and did not update the disclosures.

<u>Consumer Understanding</u>

23. Consumers have no reason to expect that Defendants engaged in second-by-second tracking of consumer viewing data by surreptitiously decoding content and sending it back to their own servers. Further, Defendants' representations were not sufficiently clear or prominent to alert consumers to their practices related to data collection and sale of licenses. Consumers' viewing history is subject to certain statutory privacy protections, such as the Cable Privacy Act. 47 U.S.C. § 551.

24. Some consumers first learned of Defendants' practice of turning on "Smart Interactivity" by default through a news article published in November 2015. Consumers contacted VIZIO customer service to complain that ACR tracking was on by default.

## **VIOLATIONS OF THE FTC ACT AND THE CFA**

25. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or unfair practices in or affecting commerce."

26. Misrepresentations or deceptive omission of material fact constitute deceptive acts or unfair practices prohibited by Section 5(a) of the FTC Act.

27. Acts or practices are unfair under Section 5 of the FTC Act if they cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

28. The CFA, N.J. Stat. Ann. § 56:8-2, prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . .

29. The CFA defines "merchandise" as "any objects, wares, goods commodities, services or anything offered, directly or indirectly to the public for sale." N.J. Stat. Ann. § 56:8-1(c).

30. At all relevant times, Defendants have engaged in the advertisement, offering for sale and sale of merchandise within the meaning of N.J. Stat. Ann. § 56:8-1(c), specifically VIZIO televisions and "Smart Interactivity" services.

## COUNT I

## UNFAIR TRACKING

31. Plaintiffs incorporate by reference all the foregoing paragraphs.

32. Beginning in February 2014, Defendants use ACR technology to comprehensively collect the sensitive television viewing activity of consumers or households across cable or broadband services, set-top boxes, external streaming devices, DVD players, and over-the-air broadcasts, on a second-by-second basis and store this viewing data indefinitely. Defendants provided this viewing data to third parties, which used it to track and target advertising to individual consumers across devices. Defendants engaged in these practices

through a medium that consumers would not expect to be used for tracking, without consumers' consent.

33. Defendants' collection and sharing of sensitive data without consumers' consent has caused or is likely to cause substantial injury to consumers that is not outweighed by countervailing benefits to consumers or competition and is not reasonably avoidable by consumers themselves.

34. This is an unfair act or practice, in violation of Section 5(a) of the FTC Act, 15. U.S.C. § 45(a).

35. Further, such is also an unconscionable commercial practice in violation of the CFA. Each instance of Defendants' unfair tracking constitutes a separate violation under the CFA, N.J. Stat. Ann. § 56:8-2.

## COUNT II

## DECEPTIVE OMISSION REGARDING SMART INTERACTIVITY

36. Plaintiffs incorporate by reference all the foregoing paragraphs.

37. Beginning in February 2014, Defendants represented, expressly or by implication, that the "Smart Interactivity" feature of their televisions enabled program offers and suggestions about what to watch.

38. Defendants failed to adequately disclose that the "Smart Interactivity" feature comprehensively collected and shared consumers' television viewing activity from cable boxes, DVRs, streaming devices, and airwaves, which Defendants then provided on a household-by-household basis to third parties.

39. Defendants' failure to disclose adequately the material information described in Paragraph 38, in light of the representation set forth in Paragraph 37, is a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

40. Further, such are also unconscionable commercial practices and/or omissions of material fact in violation of the CFA. Each instance of Defendants' deceptive omissions regarding "Smart Interactivity" constitutes a separate violation under the CFA, N.J. Stat. Ann. § 56:8-2.

## COUNT III

## DECEPTIVE REPRESENTATION REGARDING SMART INTERACTIVITY

41. Plaintiffs incorporate by reference all the foregoing paragraphs.

42. Beginning in February 2014, Defendants represented expressly or by implication that Defendants would provide program offers and suggestions to consumers with "Smart Interactivity" enabled on their televisions.

43. In fact, Defendants did not provide program offers or suggestions to consumers with "Smart Interactivity" enabled on their televisions.

44. This is a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

45. Further, such is an unconscionable commercial practice and/or misrepresentation in violation of the CFA. Each instance of Defendants' misrepresentation regarding "Smart Interactivity" constitutes a separate violation under the CFA, N.J. Stat. Ann. § 56:8-2.

## THE COURT'S POWER TO GRANT RELIEF

46. Section 13(b) of the FTC Act, 15 U.S.C. §53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may remand ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

47.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to allow the Attorney General and the Director to enforce the CFA against Defendants in this Court and to grant such relief as provided under the CFA, including injunctive relief, N.J. Stat. Ann. § 56:8-8, civil penalties, N.J. Stat. Ann. § 56:8-13, reimbursement of attorneys' fees, N.J. Stat. Ann. § 56:8-14, investigative costs, N.J. Stat. Ann. § 56:8-11, and such other relief to which the Attorney General and the Director may be entitled.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs FTC, Attorney General and Director, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and the CFA, N.J. Stat. Ann. § 56:8-1 et seq., and the Court's own equitable powers, request that the Court:

A.     Enter a permanent injunction to prevent future violations of the FTC Act and the CFA by Defendants;

B.     Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and CFA, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, civil penalties, and disgorgement of ill-gotten monies; and

C.     Award Plaintiffs the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

| | |
|---|---|
| FEDERAL TRADE COMMISSION | CHRISTOPHER S. PORRINO, Attorney General of the State of New Jersey |
| By: *signature*<br>KEVIN H. MORIARTY<br>MEGAN E. COX<br>Federal Trade Commission<br>600 Pennsylvania Avenue N.W.<br>Washington, DC 20580<br>kmoriarty@ftc.gov<br>mcox1@ftc.gov<br>Tel: (202) 326-2949 | By: *signature*<br>KENT D. ANDERSON<br>ELLIOTT M. SIEBERS<br>RUSSELL M. SMITH, JR.<br>Deputy Attorneys General<br>State of New Jersey<br>Department of Law & Public Safety<br>Division of Law<br>124 Halsey Street, 5th Floor<br>Newark, New Jersey 07101<br>Kent.Anderson@dol.lps.state.nj.us<br>Elliott.Siebers@dol.lps.state.nj.us<br>Russell.Smith@dol.lps.state.nj.us<br>Tel: (973) 648-2689 |
| *Attorneys for Plaintiff*<br>FEDERAL TRADE COMMISSION | *Attorneys for Plaintiff*<br>CHRISTOPHER S. PORRINO, Attorney General of the State of New Jersey, STEVE C. LEE, Director of the New Jersey Division of Consumer Affairs |

Dated: February 6, 2017